# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARY BETH BERTIG ,           :     No. 3:15cv2224
            **Plaintiff**        :
                                    :
   **v.**                           :
                                    :     **(Judge Munley)**

**JULIA RIBAUDO HEALTHCARE**   :
**GROUP, LLC d/b/a JULIA RIBAUDO** :
**EXTENDED CARE CENTER and**    :
**BRIGHTEN AT JULIA RIBAUDO;**   :
**JULIA RIBAUDO SENIOR**         :
**SERVICES, LLC d/b/a JULIA**      :
**RIBAUDO EXTENDED CARE**      :
**CENTER and BRIGHTEN AT JULIA** :
**RIBAUDO; and SABER**           :
**HEALTHCARE GROUP, LLC,**      :
            **Defendants**     :

## MEMORANDUM

       Before the court for disposition is a motion for summary judgment filed by

Defendant Julia Ribaudo Healthcare Group, LLC, and Defendant Saber

Healthcare Group, LLC. The matter has been fully briefed and is ripe for

disposition.

**Background**

       Plaintiff worked at Julia Ribaudo Nursing Home from 1982 until 2014 as a

restorative/nurses' aide. (Doc. 37, Def. Stmt. of Mat. Facts ("SOF") ¶ 73).[1]

---

[1] For this brief factual background section, we will cite to the defendants'
statement of material facts as to which no genuine issue remains to be tried.

Plaintiff has a history of medical problems, including asthma and cancer. She received her diagnosis of bladder cancer in 2011.[2] (Id. ¶ 75). Despite this diagnosis, plaintiff continued her employment with the defendants. (Id. ¶ 73). She remained employed by defendants for the next two years. (Id.)

In 2012, Plaintiff took leave from work via the Family and Medical Leave Act (hereinafter "FMLA") from May 29, 2012 to June 25, 2012. (Id. ¶ 24). She completed the necessary FMLA paperwork, and had the FMLA form signed by her physician who indicated on the form that plaintiff would not require intermittent leave. (Id. ¶ 25).

The following year, plaintiff missed a total of thirteen days between April 2013 and April 2014. (Id. ¶ 22). According to the call off calendar, which was reviewed by Shelia Layo, an administrator at Julia Ribaudo, plaintiff called in sick for various reasons including: foot pain; a stress fracture in her foot; an upset GI; diarrhea and a temperature; stomach cramps; a sore throat; dizziness; and a common cold. (Id. ¶ 105). At some point prior to April 2014, Layo spoke with plaintiff about her attendance issues. (Id. at ¶ 5). The defendants claim that

---

(Doc. 37). The facts to which we cite are generally admitted by the plaintiff. (See Doc. 42, Pl.'s Ans. to SOF).

[2] The parties dispute whether the diagnosis was in 2011 or early 2012.

during this meeting, plaintiff did not provide an explanation for her numerous absences.[3] (Id. ¶ 6).

Defendants have a company policy which states that termination may occur when an employee accrues seven absences within a twelve month rolling period. (Id. ¶ 18). After tallying plaintiff's thirteen absences between April 2013 and April 2014, defendants terminated plaintiff from her position in accordance with company policy. (Id. ¶ 17). The parties agree that none of the absences between April 2013 and April 2014 were formally designated as FMLA qualifying absences, but dispute whether they qualify regardless of the absent paperwork. (Id. ¶ 23).

During plaintiff's termination meeting, Layo informed plaintiff that she was being terminated for excessive call offs. (Id. ¶ 38). In response, she told Layo that she was sick, and asked Layo not to fire her. (Id. ¶ 39). Layo informed plaintiff that if she was sick she should have taken FMLA leave and that she was going to have to let plaintiff go. (Id. ¶ 40). Layo told plaintiff that if she started feeling better, she could come back and they would talk about her getting a position back. (Id.)

---

[3] This is a major issue of contention between the parties. Plaintiff claims that she told Layo at this meeting that she was absent because of her cancer and asthma. (Doc. 42, Pl.'s Ans. to SOF at 2). Defendants hang the crux of their argument on the position that the people who were responsible for terminating the plaintiff were unaware of her bladder cancer and asthma until after plaintiff was terminated.

Based upon these facts, plaintiff filed a three-count complaint on November 19, 2015. The complaint raises the following causes of action: Count I, interference and retaliation under the FMLA; Count II, disability discrimination and failure to accommodate pursuant to the Americans with Disabilities Act (hereinafter "ADA"); and Count III, age discrimination in contravention of the Age Discrimination in Employment Act (hereinafter "ADEA").

Defendants filed a motion to dismiss on February 22, 2016. On July 12, 2016, we dismissed Count III's wrongful termination claim based upon the ADEA. Defendants filed the instant motion for summary judgment on May 3, 2017 with respect to all remaining claims. This motion is fully briefed and is ripe for disposition.

**Jurisdiction**

The court has federal question jurisdiction over this FMLA action. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district court jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(C)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to

admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**Discussion**

As noted above, plaintiff's complaint raises several different causes of action, and the defendants seek summary judgment on all counts. We shall address each count in turn.

**Count I: FMLA Violations**

Plaintiff brings both interference and retaliation claims pursuant to the FMLA. The FMLA contains two distinct provisions prohibiting employers from: (1) interfering with an employee's exercise of her right to take reasonable leave for medical reasons; and (2) discriminating or retaliating against an employee who exercises this right. 29 U.S.C. § 2615(a); see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F. 3d 294, 301 (3d Cir. 2012); Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005).  We start our analysis with the FMLA interference claim.

## A. FMLA Interference

To prove an FMLA interference claim, plaintiff must establish: (1) she was an eligible employee under the FMLA; (2) the defendants were an employer subject to the FMLA's requirements; (3) she was entitled to FMLA leave; (4) she provided notice to the defendants of her intention to take FMLA leave; and (5) she was denied benefits to which she was entitled under the FMLA. Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014) (citations omitted).[4] Defendants contest all of these elements.

An eligible employee is entitled to FMLA leave if she has a "serious health condition ... involv[ing] ... continuing treatment by a health care provider." 29 U.S.C. § 2611(11). This includes "any period of incapacity or treatment for such incapacity due to a chronic serious health condition." 29 C.F.R. § 825.115(c). A chronic serious health condition: "(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, (2) Continues over an extended period of time, and (3) May cause episodic rather than a continual period of incapacity." Id. A serious health condition also includes "treatment for a serious, chronic health condition which, if left untreated, would likely result in an absence from work of more than three days." 29 C.F.R. § 825.113.

---

[4] "Also, '[b]ecause the FMLA [interference claim] is not about discrimination, a McDonnell Douglas burden-shifting analysis [as established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)] is not required.' " Id. at 192 (quoting Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006)).

Plaintiff contends that the FMLA entitles her to leave because her health conditions, specifically bladder cancer and asthma, qualify as serious health conditions under the FMLA. (Doc. 41, Pl.'s Br. In Opp'n, at 10). We agree with the plaintiff. The Department of Labor's regulations, as well as the Act's legislative history, expressly include "most cancers" and "severe respiratory conditions" among its examples of qualifying serious health conditions under the FMLA. S. REP. NO. 103-3, at *29 (1993); See 29 C.F.R. § 825.114, 115(e)-(f). Courts have also found that asthma qualifies as a serious health condition under the FMLA. See Gunter v. Cambridge-Lee Indus., LLC, – F. Supp. 3d –, No. 14-2925, 2016 WL 2735683, at *6-8 (E.D. Pa. May 16, 2016) (finding that plaintiff's asthma was a "chronic health condition"). Thus, plaintiff's complaint states a "serious health condition" under the FMLA.

We next address whether plaintiff was entitled to FMLA leave for her absences during the April 2013 to April 2014 time period. We find that plaintiff's claim fails on this element. As we previously discussed, plaintiff does have two disabilities that qualify her for FMLA leave. Plaintiff was entitled to take leave for these disabilities under the FMLA, as she had done in 2012 for a brief time period. However, by plaintiff's own admission, most of her absences between April 2013 and April 2014 were unrelated to her asthma and were unrelated to her bladder cancer—the FMLA qualifying disabilities.

8

During plaintiff's deposition, counsel for the defendants asked plaintiff the reasoning behind every absence that she took between April 2013 and April 2014. As plaintiff chronologically reviewed the call off reports with defense counsel, plaintiff confirmed reasons unrelated to her cancer or asthma for ten out of twelve of those days in which she called in sick. (Doc. 37 & Doc. 41, Pl.'s Dep. (hereinafter "Pl.'s Dep.") at 73:8-88:17). According to the call off reports from plaintiff during that time period, reference is made to a problem with her foot, foot pain, stress fracture in her foot, GI upset, sick, sick, diarrhea/temperature, stomach cramps, sore throat/dizzy, UTI, and stomach/throat/cold. (Id.) Plaintiff admits that ten absences within that time period are unrelated to her disability. (Id. at 89:10-18). Plaintiff claims that two absences may have been caused by her asthma or bladder cancer, but she cannot be sure. (Id. at 89:23-24). Plaintiff cannot remember the reason for her final absence, the one which sparked her termination. (Id. at 88:15-18).

Defendants have a policy in place that termination occurs when an employee accrues seven absences within a twelve month rolling period. (Doc. 37, SOF ¶ 18). The FMLA prevents the defendants from counting FMLA qualified absences against the plaintiff when tallying an employee's number of absences for termination purposes. See generally Lichtenstein, 691 F.3d 294. However, FMLA qualified absences aside, plaintiff still missed ten days of work for

9

miscellaneous reasons—three absences more than allowed by defendants prior to termination.

Plaintiff asks us to consider a statement made during her termination meeting by Shelia Layo, the administrator who terminated plaintiff. While the parties dispute whether Layo knew of plaintiff's disability at the time of the termination meeting, the parties agree that Layo made a comment to the plaintiff regarding her feeling better in the future and an opportunity to re-apply if the circumstances present themselves. (Id.; Doc. 37, SOF ¶ 40). Plaintiff, in her deposition, claims that this is the only evidence that she has that would establish that she was fired because of having a disability. (Pl.'s Dep. at 91:10-15). We do not find the statement by Layo to be persuasive in proving or disproving that plaintiff was terminated because of her disability, as the record is clear that plaintiff's illnesses (FMLA qualifying as well as general illnesses) were the reason for her absenteeism.

Because our analysis ends at the finding that plaintiff was not entitled to FMLA leave for the absences for which she was fired (a sore throat and sore foot, for example), we will not consider which employees at Julia Ribaudo, if any, had notice of plaintiff's disability. Plaintiff, having successfully applied for and taken FMLA leave during her employment with defendants in the past, was aware of the requirements for such leave. (Id. at 21:6-17). In fact, even after

defendants warned her about excessive absenteeism prior to her termination, plaintiff still did not take any steps toward applying for FMLA leave. (Id. at 23:1-7). Plaintiff, in rebuttal, argues that the defendants failed to adequately inform her of her rights under the FMLA. Notably, plaintiff contradicts this in her deposition where she states that she was advised of her FMLA rights, and was aware of her obligations as an employee at Julia Ribaudo. (Id. at 113:3-17).

Defendants claim that they terminated plaintiff for excessive absenteeism. We agree. Because, by her own admission, the reasons that plaintiff missed work on more than seven occasions, in violation of the company's policy, were unrelated to her FMLA disabilities, plaintiff was not entitled for FMLA leave for these absences. Thus, we will grant summary judgment for the defendants on this claim.

### B. Retaliation

Count I of plaintiff's complaint also raises an FMLA retaliation claim. To establish an FMLA retaliation claim, the plaintiff must prove that: (1) she engaged in a protected activity under the FMLA, (2) plaintiff experienced an adverse employment action following the protected activity, and (3) a causal link exists between the protected activity and the adverse employment action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).

Again, defendant's motion for summary judgment contests every element of this claim. However, based on our abovementioned reasoning, we must end our analysis at the first element. The protected activity in this case would have been plaintiff taking FMLA leave for her disabilities. See generally Erdman v. Nationwide Ins. Co., 582 F.3d 500 (3d Cir. 2009). However, because ten out of at least twelve of plaintiff's absences were unrelated to her FMLA disabilities, we find that plaintiff was not engaged in a protected activity under the FMLA.

Accordingly, we will grant summary judgment for the defendants on this count.

## Count II: ADA Claims

We next address plaintiff's Count II claims for disability discrimination, retaliation, and failure to accommodate under the ADA. Defendant moves for summary judgment on these claims. We will address them in turn.

### A. Disability Discrimination

To state a claim for disability discrimination under the ADA, plaintiff must establish that: (1) she has a disability under the ADA; (2) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she suffered an adverse employment action as a result of discrimination. McDonnell Douglas Corp., 411 U.S. at 802. If the plaintiff succeeds, the burden of production shifts to the defendant to

"articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id.

For a plaintiff to defeat a motion for summary judgment when the defendant points to a legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 523 (3d Cir.1992). If the plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case. Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122-24 (7th Cir.1994); Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir.1993).

Defendants have three arguments to support their motion for summary judgment on this point: (1) plaintiff's asthma does not qualify as a disability; (2) plaintiff did not establish a prima facie case because she failed to notify her supervisors of her disability and request an accommodation; and (3) if plaintiff did

establish a prima facie case, defendants have pointed to a legitimate nondiscriminatory reason to terminate plaintiff, that being her absenteeism.

As we discussed in our memorandum regarding defendants' motion to dismiss, plaintiff clearly qualifies as disabled under the ADA. (Doc. 13 at 9). To qualify as disabled under the ADA, plaintiffs must establish that (1) they have a physical or mental impairment that substantially limits one or more of their major life activities, (2) there is a record of such impairment, or (3) they are regarded as having such an impairment. 42 U.S.C. § 12102(1). The federal regulations provide that major life activities include: "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, [and] breathing...." 42 U.S.C. § 12102(2)(A).

Congress clearly intended the ADA to protect cancer patients from disability discrimination. See H. Rep. No. 101-485(III), at 29 (1990) (House of Representatives' legislative history describing 1990 ADA amendments). "Cancer is a 'paradigmatic example of such an impairment.' " Unangst v. Dual Temp. Co., Inc., No. 10-6811, 2012 WL 931130, at *4 (E.D. Pa. Mar. 19, 2012) (quoting Adams v. Rice, 531 F.3d 936, 952 (D.C. Cir. 2008)). Regarding plaintiff's asthma, her condition limits her ability to breathe, which, as noted above, is recognized as a major life activity. See 29 C.F.R. § 1630.2(i)(1)(i). For these reasons, we find that plaintiff has two qualifying disabilities.

14

Turning to defendants' second argument, we address whether plaintiff has established a prima facie case of disability discrimination. As discussed, plaintiff has established that she was disabled under the ADA. Additionally, defendants do not seem to contest that plaintiff was qualified for her position at Julia Ribaudo. The record supports this finding as well, as defendants employed plaintiff for over thirty years, and plaintiff continued her employment with them while suffering from disabilities.

The parties do contest whether plaintiff suffered an adverse employment decision as the result of discrimination. Specifically, defendants argue that plaintiff's failure to notify her supervisors of her disability in the first place and request and accommodation was "fatal" to her claim. We find that plaintiff has failed to establish her claim on this element, but we base our finding on different reasoning.

Indisputably, plaintiff suffered from an adverse employment decision. However, she has not produced sufficient evidence to show that this decision was because of her disability. As we explained in detail above, we are faced with a situation where plaintiff herself admits that she is not able to point to any direct or circumstantial evidence aside from an ambiguous comment about returning to work after she takes care of her health and a "feeling" that she was terminated because of her disability. (Pl.'s Dep. at 91:10-15). While we recognize that the

burden of production to establish a prima facie case is a relatively low burden, we simply do not find nearly enough evidence to conclude that plaintiff has established a prima facie case on this point.

Although we agree that defendants have in fact presented a legitimate non-discriminatory reason for plaintiff's discharge—her excessive absenteeism, we need not continue this burden shifting framework. We will grant summary judgment for the defendants on this claim.

### B. ADA Retaliation Claim

To state an ADA retaliation claim, plaintiff must establish that: (1) she engaged in a protected activity, (2) she experienced an adverse employment action following the protected activity, and (3) there is a causal link between the protected activity and the adverse employment action. Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). Defendants argue that we need not consider the three prong analysis here because plaintiff's claim fails at the first prong. Specifically, defendants argue that plaintiff did not engage in a protected activity because she never requested an accommodation until after her termination in 2014.

The Third Circuit Court of Appeals has held that medical leave may constitute an appropriate accommodation under the ADA. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004); see also Buskirk v.

Apollo Metals, 307 F.3d 160, 169-71 (3d Cir. 2002) (finding that an employer's provision of medical leave was a reasonable accommodation for an injured employee). Courts disapprove of medical leave as an appropriate accommodation only in situations where the leave is for an indefinite term. See Fogleman v. Greater Hazelton Health All., 122 F.App'x. 581, 585-86 (3d Cir. 2004).

We agree with the plaintiff that in her case, requesting leave for her disability likely would have constituted a protected activity under the ADA. However, because plaintiff was (1) aware of the procedure to obtain FMLA leave, (2) was given significant warning about her accruing absences prior to termination, and (3) by her own admittance never actually requested FMLA leave for her absences, we find that plaintiff was not engaged in a protected activity. Thus, her claim fails, and we will grant summary judgment for the defendants regarding this claim.

### C. ADA Failure to Accommodate Claim

Plaintiff's final claim under the ADA is failure to accommodate a disability. Discrimination under the ADA includes failing to accommodate reasonably "the known physical or mental limitations of an otherwise qualified individual with a disability" unless the individual's employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the

business." 42 U.S.C. § 12112(b)(5)(A).   A reasonable accommodation could include a part-time or modified work schedule. 42 U.S.C. § 1211(9).

The law provides that both employer and employee "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997). "An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in the interactive process by showing that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith." Williams v. Phila. Hous. Auth. Police Dept., 360 F.3d 751, 772 (3d Cir. 2004).

The record here is clear that between April 2013 and April 2014, plaintiff never requested an accommodation for her disabilities. She only did so after she was terminated as an employee. Her failure to request an accommodation during her employment is fatal to her claim. Accordingly, we will grant summary judgment for the defendants on this claim.

**Count III: ADEA Claim**

Finally, we address plaintiff's claim under the ADEA for a hostile work environment.[5]

When we ruled on defendants' motion to dismiss this claim initially, we denied defendants' motion. (Doc. 13). We explained that the Third Circuit has not formally recognized such a cause of action. See Slater v. Susquehanna Cty., 465 F.App'x. 132, 138 (3d Cir. 2012) ("We assume, without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination [.]"); see also Lyles v. Phila. Gas Works, 151 F. App'x. 169, 171 n.3 (3d Cir. 2005) ("We have not formally recognized a cause of action[.]"). Where the court assumed recognition for a hostile work environment cause of action, it reserved judgment for cases in which the age-based harassment was sufficiently "severe or pervasive enough to create an abusive working environment." Slater, 465 F.App'x. at 138.

We concluded at the motion to dismiss stage that plaintiff's allegations that defendants treated her rudely and condescendingly, selectively enforced policies against her, and issued pretextual discipline against her – unlike her younger co-workers was sufficient to assert this claim. (Doc. 13; Compl. ¶¶ 25-26). We noted, however, that plaintiff had to develop the facts of this claim more fully.

---

[5] We previously dismissed plaintiff's ADEA claim for wrongful termination (Doc. 13 at 13-14).

At this point in time, we agree with the defendants that plaintiff has not further developed any of these allegations. Plaintiff's brief in opposition to defendant's motion for summary judgment on this claim cites the following as evidence of age discrimination: ". . . Defendants counted disability-related absences against her for disciplinary purposes, reprimanded her for taking disability-related absences, made negative comments to her regarding her conditions, failed to accommodate her conditions or otherwise excuse her absences, treated her with antagonism after she disclosed her medical condition, issued her unwarranted discipline and treated her much less favorably than her non-disabled co-workers." (Doc. 41 at 24). Even these relatively vague allegations produced by the plaintiff do not, directly or indirectly, suggest a scintilla of age-based discrimination.

Ultimately, after reviewing plaintiff's brief on this matter, we were only able to find one conclusory sentence regarding this claim: ". . . the record demonstrates that Ms. Bertig was treated much less favorably than her younger colleagues." (Id.) We carefully reviewed the record.

Plaintiff who, at the time, was 56 years old, alleges that defendants "just treated [her] differently" and that on one occasion she was written up for something that she had permission to do while another co-worker was not. (Pl.'s Dep. at 23:14-17). She also claims that she was pulled to the floor more than the

other restorative aide, Vicky Scudillo, who was somewhere between 45 and 48 years old. (Id. at 24:5-10). When pushed on these allegations, plaintiff seemed to be uncertain as to why she believes she was treated differently because of her age, and suggested that it might be because she was just not a "favorite" of the administration. (Id. at 24:17). Plaintiff claims that those who were over the age of 40 were treated poorly in comparison to those under the age of 40. (Id. at 123:6-9). Notably, Vicky Scudillo, who was over the age of 40, was a "favorite," which contradicts plaintiff's argument. (Id. at 24:19).

We find insufficient evidence of age-based harassment severe or pervasive enough to create a hostile working environment. The evidence plaintiff has proffered is not the material of a hostile work environment claim. We will grant summary judgment for the defendants on this claim.

**Conclusion**

For the foregoing reasons, we will grant summary judgment in favor of the defendants on all counts. An appropriate order follows.


**Date: October 31, 2017**                    **s/ James M. Munley**
                                              **JUDGE JAMES M. MUNLEY**
                                              **United States District Court**